Bruno here with us. He's sat with us several times and, as I said yesterday, we really appreciate the work of senior judges who work for free and shoulder a substantial portion of the workload of the federal judiciary. We've appreciated him coming here before and look forward to working with him again and appreciating him being here this week. We have three cases to hear this morning. We're familiar with your cases, counsel. We've read your briefs, the authority cited in your briefs, at least portions of the record. In the limited time available to you, you should feel free to go straight to the heart of your argument, make the most important points that you would like to leave with us this morning, whatever you're not able to address, but it is addressed and the briefs will, of course, still be before the court. You don't waive anything by not addressing it here. We're probably going to have some questions. Please don't treat the red light as aspirational. When it shines, it's time to wrap up. Of course, if you're finishing an answer to a question from the court, you can finish your answer, but do be mindful of the clock. Our first case this morning is United States v. Thomason. Mr. Lawrence. May it please the court, my name is Noel Lawrence and I was appointed to represent Mr. Rick Thomason, who is currently under the custody of the Bureau of Prisons until August 2024. The district court abused its discretion in failing to hold a sentencing hearing, resentencing A resentencing hearing, in this case, is a critical stage in this criminal proceedings under the facts and circumstances of this case. Under the due process clause . . . We've said, though, that when a court must exercise its discretion in modifying a sentence in ways that it was not called upon to do at the initial sentencing, that a resentencing hearing may be necessary, but it seems that in the circumstance that we have here, where there was no change in the guideline range, that at least in our unpublished decisions, we've said that's not the kind of situation that requires that exercise of discretion for a resentencing hearing. Now, I realize those are unpublished decisions, but is that right or not? Why not? It's distinguishable, Your Honor. In this particular case, there was no amended PSI, and if we went with the amended PSI, it would have shown that the sentencing guidelines were significantly less than it was back in 2003. In addition, the sentencing landscape has changed tremendously since March of 2003, when Mr. Thomason was originally sentenced. That was three months before the Blakeley v. Washington, almost a year before Book of Fanfan, and also the residual clause in the guidelines no longer applied. It was excised. Let me ask you a question. I thought the guideline range remained 235 to 293. Only because the district judge said that it did, but the district judge did not recalculate or correct the guidelines as it should have. Was there an objection to that? Well, the court did not entertain any of that before just simply summarily ruling that this is what I'm going to do. There was no record motion for rehearing or motion for reconsideration with regards to not having . . . I thought his guideline range was calculated by applying 2K2.1B, and his criminal history category was 6, neither of which would have been affected by the Armed Career Criminal Act error. It would have been. If you look at, for instance, the paragraph from 26 to 30, what the probation officer did was compare what the calculations came out to be, quite incorrectly, as the government has noted to the court in 28J last week, that the calculations pursuant to 2K2.1 were higher than the level 34 that's called for by the ACCA guidelines, and therefore they were going to go with the 2K2.1 calculations. If they had done it correctly, it would have been less than the ACCA-induced guidelines. It would have been 34, and then he would have been at a level 30 rather than a level 33. The government filed a 28J to the court last week indicating the error in that pre-sentence report. This is a classic case of Brown where, for all intents and purposes, even though Brown involved one and only one count of conviction, this is simply one count of conviction, even though it was eight of them, they all concern the same statutory provision, which is the 922G or the 922J, where the punishment is under 924A rather than 924E. For all intents and purposes, not only has the statutory provision changed with regards to the ACCA error, but also the statutory provision for all the counts are the same, which is the punishment portion is a 924A, just like it was in the Brown case. In addition, Your Honor, I want to point out that the district court exercised wide discretion in this resentencing that was done in February 2017. At the original sentencing, the district court utilized the range that was required by the We did not discuss the guidelines or the 18 U.S.C. 3553 factors. There's no notation of that in the minutes, and the guidelines was not, as I indicated, corrected or recalculated. The district court now is using the reasoning for the departure as the new basis for this resentencing, and it doesn't recognize all the changes that have occurred since the sentencing back in March 2003. We're at a loss to figure out how the judge came up with the 293 aggregate, apart from the fact that it's within the guidelines, because if you divide the 293 by 4, that's about 73 months for each count, if you were doing it that raw. The government asked for 327 months. That would have been 82 months per count, but the court simply said aggregate them. But the court is now treating the guideline as mandatory, and it's no longer mandatory. It's advisory. The United States Sentencing Guidelines 5G 1.2D, on which the district court is relying . . . Where is there any suggestion that the district court thought that the guidelines were mandatory? At the first sentencing, the district court varied upward from the guideline range, which would suggest to me that the district court understood that the guidelines were not mandatory. Otherwise, it would have sentenced within the range. There's two different portions to that. The guidelines was mandatory then. There's no question about it. Back in 2003, it was 235 to 293. That's what the court found at that point. The court then departed one level for the criminal history competition. It was an upward departure. It was an upward departure to the next level. That's what happened. Okay. But the court did initially find that the guideline range that applies, the adjusted guideline range, was 235 to 293. But if the court did that at the first time and at the second time did not upwardly depart and sentenced within the range, what is there to suggest that the district court thought this time around that the guidelines were mandatory? Well, I don't know what the court was thinking this time, but he's treating it as mandatory. How? To the extent that he's . . . Just because he sentenced within the range? Well, now that he's treating 5G 1.2 as something that he has to do pursuant to . . . Well, he does have to calculate a range correctly. He has to apply the Chapter 5 provisions, right? He doesn't have to apply the . . . He has to. In calculating the range, he has to apply Chapter 5. Right. If you even get to calculating the guidelines in the first . . . You have to calculate the guidelines. Booker requires a district court to consider the guidelines. That's part of the sentencing process now. Procedure . . . Procedurally. Yes, Your Honor. The district court has to apply the Chapter 5 provisions, right? He has to consider it. He doesn't have to . . . He has to do it. He has to actually calculate what it would be. Right, but he never really did that. What he did was simply use the PSI from 2003. I thought a minute ago that what you were saying was that because he did that, he was treating it as mandatory. I'm confused. Well, I'm saying he's treating it as mandatory because he's still using the guideline calculation from 2003 when the guidelines were mandatory in terms of the calculations for the adjusted offense guidelines. And then he went the additional step, something that was not considered at the original sentencing, which was consecutive. Simply say, let's do it consecutive. Nobody asked for consecutive or envisioned consecutive at the original sentencing back in March 2003. And at that time, the guidelines was mandatory. Now it's advisory, and we would expect that the court would allow both sides to give an input as to whether it should go upward or go downward. It's ironic that the government asked for a hearing if the court went downward. They didn't object after he did go downward and still didn't give the government a hearing. In our case, we're saying that he should have had a hearing in the first place, and it's abuse of discretion not to have a hearing based on the factors that are involved. In this case, it is closely aligned to the Jasmine Brown case. And unlike Hernandez, our court, in which Judge William Pryor, yourself, unpublished case, made the observation that there are other counts involved. For instance, a drug count or a 924C. That's not the case in this case. Okay, well, I think we understand, Mr. Lawrence. You've saved five minutes for rebuttal. I want to hear from the government about whether it thinks the guideline range was calculated incorrectly or not. Thank you. Thank you. Good morning. May it please the Court, Jordan Learn on behalf of the United States. Your Honor, to answer your question, when I was reviewing the original guideline calculation, I do believe the 2K2.1 range was calculated incorrectly at the time when Mr. Thomason was originally sentenced. But the caveat to that is this. That error was not a Johnson error. It was not mentioned in any of the pleadings before the district court. Rather, in the Section 2255 proceedings, the argument was that I was originally sentenced as an armed career criminal, but I don't qualify anymore, and now my statutory maximum on the four felon in possession counts has dramatically decreased. But there was never a suggestion that the guideline range in any of the pleadings needed to be revisited. It wasn't invited. It wasn't argued. Section 2255 gives the district court two options. Tell me this. I was confused by this then. How should the guidelines have been calculated? Had they been calculated correctly this time? This time, if the district court recalculated the guideline range, I think it would still fall, because Mr. Thomason, so if it was a full resentencing, starting anew, I think Mr. Thomason, he didn't qualify as an armed career criminal anymore under today's law, and so it would have been still a 2K2.1 calculation, but under the current guideline manual, the base offense level would change because the guideline . . . Would you use the current manual? Well, if the district court, in its discretion, orders a full resentencing hearing where it's going to revisit the guideline calculation, I do think we'd use the new manual, but for further clarification, before you get there, the district court has to decide, in its discretion, which remedy it is going to order, and the statute itself doesn't require the district court to order a full resentencing hearing. Rather, it can opt for a more limited correction of a particular error, which I think is clearly what Judge Collier was going for in this particular case. And so the question is, was that an abuse of his discretion? And I think if you look at the pleadings in this case, the 2255 filings, there was no suggestion or invitation for Judge Collier or argument that he should consider the new guideline range, what it would be under the current manual. Let me make sure I understand this then. So your concession is that there was an error in the calculation of the guideline range originally. That's correct. But it's not one that was noticed on appeal or was ever the subject of any further proceeding, right? That's correct, Your Honor, and it wasn't identified, I don't think, until the appeal. The district court wasn't aware of it, and it certainly wasn't a ground for relief in the 2255. Well, it couldn't be, because a miscalculation of the guideline range is not cognizable in the 2255. In theory, I guess the defendant, Mr. Thomason, could bring an ineffective assistance claim, but that didn't happen. Right. Bear with me. I just want to make sure I understand it. So that is an error that was never brought up at any stage, either on appeal or on post-conviction review. That's correct, Your Honor, and I don't think Mr. Thomason even appealed. Yeah, but could have brought it up on appeal. That's my point. And so the error that was corrected under the Armed Career Criminal Act would not change the guideline range. Is that right? That's correct. If you took what the district court did originally and you took out the Armed Career Criminal Enhancement . . . That would not change the guideline range. That's right. Okay. The judge solicited some comments or suggestions. Were there any submitted, and what, if anything, did he do with that? So the district court gave the parties the opportunity to argue and submit additional evidence. The government didn't submit anything, but Mr. Thomason submitted evidence of his post-sentencing conduct. I think it was classes that he had taken or incarcerated certificates that he had gained. And the district court didn't explicitly mention that in his order, but he did take into account what he said was the arguments of the parties. And essentially Mr. Thomason's argument was that the court should consider his post-sentencing conduct when deciding how to modify Mr. Thomason's sentence as relief for the Johnson error. And so I think that's probably the explanation for the reduction. Because originally the district court departed upward, right, based on Mr. Thomason's criminal history. And then we come back. The district court was operating under the same guideline range, opted not to review the guidelines or order a new pre-sentence report, but did solicit that evidence. And so I think that explains probably the reduction. Does the solicitation of that additional information require a hearing? No, Your Honor, it would not. So the question is, obviously it's within the district court's discretion whether or not it wants to hear new information. In this case, given the new information that was provided, it had nothing to do with what happened at the original sentencing proceeding, right? Thomason didn't challenge anything that was in the pre-sentence report, which is really what the purpose of the sentencing hearing is. The only additional information had to do with his post-sentencing conduct, and that's information district courts routinely consider when granting 3552 motions, right? And as far as I'm aware in our court, there's no way to consider that at the original hearing. Right, you couldn't. Because it doesn't exist. So it's certainly the district court exercises discretion to review that. But that in and of itself isn't a substantial exercise in discretion that requires a hearing. Otherwise, every time a district court did that in a 3582 proceeding, right, we'd have to have a hearing over it. And those happen routinely. And I think the law of this court is that a hearing is not required when a district court considers that information, right? It's how the written submissions are sufficient. As long as the parties can have an opportunity to... You submitted no additional evidence at that point, nor did you quarrel with the factual basis of what the petitioner had submitted. That's correct. We conceded. We agreed that he was entitled to leave. Okay. And our position was that the district court, because the error certainly it altered the structure of the sentence, it didn't go to the substance of what Judge Collier imposed back in 2004. I mean, I don't think there's any way we can get around it. Obviously, the sentence would have to be reconfigured because the statutory maximum dramatically changed. Although, if you consider the aggregate statutory maximum, it went from a life max to 80 years, which is pretty much a de facto life sentence. But if you look at the substance of what Judge Collier did, right, it didn't... The Armchair Criminal Act didn't... The Johnson error didn't affect the original sentence that was imposed. So, and certainly in this circumstance, when there's no suggestion that the Johnson error influenced the district court's original sentence in any substantial way or influenced the guideline range in any substantial way, it wouldn't be an abuse of the district court's discretion to opt to modify the sentence in a way that... And if the Johnson error does not affect the calculation of the guideline sentence. It may be that the guideline sentence has some other error. Right, right. But we don't... That's not cognizable at this stage. Right, right. The Johnson error, which is the subject of this appeal, didn't have anything to do with the way the guidelines were calculated because of the 2K2.1 range. So, and the other... The criminal history category didn't change. It did not change. No, Your Honor. No, because he had enough sufficient points to qualify in the highest category without enhancement. And the judge sentenced within... Well, actually departed above the guideline range. It wasn't like Brown, right, where the defendant originally received a sentence at the statutory minimum and then on re-sentencing, imposed a sentence at the statutory maximum, right? The judge in both cases opted for a sentence... Well, the first case opted for a departed sentence above the guideline range and then came back and imposed a sentence within the guideline range. And Thompson didn't make any challenges with respect to the guideline range. There was really no reason to revisit any of that information. And even when the district court said, I'm not going to hold a hearing, submit whatever you'd like me to consider, the only evidence that was submitted was evidence of the post-sentencing conduct. It wasn't inviting the court to really substantially revisit the original 3553A factors. He didn't argue, make any comment about his criminal history or anything. He solicited written submissions, and if there had been something presented to him in writing about the calculation of the guideline range, presumably he would have considered it. Presumably he... Exactly, Your Honor. But there wasn't any. And so in this circumstance, the government's position is when the guideline range wasn't affected by the error, the district court doesn't have to revisit that range, especially if it's not invited to or argued to. It certainly... And district courts, I think, you know, they know better than any of us what they consider when they're sentencing, and it certainly maybe would be perhaps within his discretion to do that if he wanted to. But the question is whether or not Judge Collier, you know, abuses discretion in this case, and given the facts and the circumstances, the answer in the government's view is no. There wasn't an abuse of discretion here. The other point I'd like to make is, well, really, so we've touched upon the post-sentencing conduct that was considered. That's obviously an exercise of discretion, but this court's precedent seems to indicate that you don't need a hearing to consider that. We do it routinely in 3582s. We don't really have a published decision that says that, though, do we? I would point this court... This is not a case that is to our brief, but I would point this court to the United States v. Jules. The site is 595 Federal 3rd, 1239, at page 1245. And that's basically whether or not due process... What page? I'm sorry. 1245. And that's basically whether or not due process would require a hearing with the defendant present if the court's going to consider post-sentencing or new information when ruling on a 3582 motion. And in that case, the court seems to indicate that the district court can certainly hold a hearing. It's not required. Written submissions are sufficient. So I think under that precedent, in this circumstance, written submissions would be sufficient. And the other exercise of discretion that we had with Judge Collier in the recent... well, the sentence modification was the decision to run concurrent... originally ran concurrent sentences and to run them consecutively the second time to manifest the district court's original sentencing intent. And I would point the court to the Jackson decision, which is discussed in our brief, where the change was substantively similar, right? The statutory penalties had been changed. And so in that case, the district court ran sentences that had originally been run concurrent, chose to run them consecutively. So the result was the overall sentence was lowered, but the structure of the sentence had been changed. And I think in that circumstance, the court held due process doesn't require a hearing for that type of remedial modification, right? And I think the reasoning for that makes sense, right? It doesn't go... it goes to the structure of the sentence, right? But it doesn't go to the substance of what the district court was thinking when it originally sentenced the defendant. And so in that case, it wouldn't be an abusive discretion. Unless the court has any other questions, I will yield the rest of my time and ask that the court affirm Judge Collier's order for modifying Mr. Thomason's sentence without a resentencing hearing. Thank you. Thank you. Thank you. Please, the court. Your Honor, I bring the court's attention to the PSI, which is a document . . . Let's make sure we've got some things right here. So has your adversary stated it right that whatever guideline error occurred, occurred the first time? If there was an error in the calculation of the guideline range, it was an error that existed in the first hearing. It's not something that the modification of the sentence based on Johnson had anything to do with. Is that right? It's partially correct. Partially correct? Yes, Your Honor. Let me tell you why. Because if you look at paragraph 39 of the PSI, it talks about a Chapter 4 enhancement. It's a balancing test that it says if the calculations under 2K2.1 is less than the calculations under ACCA, you have to apply Level 34. In this particular case, the calculations, which were incorrect, end up being 36, and so they said we'll just go with 36 rather than 34. It's a converse. It's a converse. If the calculations were done correctly, then he would have been at Level 30 rather than 33. That was true the first time? That is correct. Yes, so that was true at the first sentencing hearing. That was a problem, right? That was a problem at the first sentencing hearing. If it wasn't for that problem, then the ACCA error would have applied. The ACCA error didn't have anything to do, though, with his guideline range. If you keep everything that occurred . . . Let's assume everything was done right at the first hearing, okay? You correct the ACCA error. Then the guideline range doesn't change. If everything was done right? If everything was done correctly. Nothing was presented to the district court here in writing to suggest that the guideline range had been miscalculated or would change. There's nothing in the record except for the balancing test that occurs in Paragraph 39 of the PSI, which balances 2K2.1 calculations with the calculations required by the ACCA. It's our position that the general rule in fashioning a sentence is that the district court should consider the guidelines that are in effect on the date that the defendant is sentenced. In this case, it would have been . . . If you had a resentencing. If you had a resentencing, yes, Your Honor. Of course, there's no question that when determining a defendant on sentence, the district court must first accurately determine the equitable sentencing guideline range. In this case, when the court fails to calculate the correct guideline range, it commits what we call procedural error. It's . . . My problem is this. It seems to me that if there had been something filed with Judge Collier to put him on notice that the original guideline range had been miscalculated and that that was something that needed to be considered too, he might well have considered that and might well have granted a resentencing hearing, but he was never told that. That is correct. There's nothing in the record to show . . . It seems to me that in that circumstance, it would be hard for us to fault a district court who, from everything that he knows . . . The only thing that has changed here is the Johnson error, and from everything that he knows, it doesn't affect the guideline range. To say that it would be error to not hold a resentencing hearing in that circumstance because the original guideline range had been miscalculated in a way that was never brought to his attention, that seems to me something we should not be telling the district court. That's just one facet of it. I'm not suggesting that it should be determinative, but this, as the Brown case indicates, is a pragmatic approach. Look at all the facts and circumstances of this case. At the end of the day, it's just one statutory guideline that's involved, which was the 924A that all eight counts have been reverted to. The fact is that the court has exercised tremendous discretion in running the counts consecutively without a hearing. Thank you, Mr. Clark. We note you were court appointed,  Thank you, Your Honor. United States v. Aike? Is that right?